UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JOHN BURGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:22-cv-00430-JMS-MJD |
| | ) | |
| MONROE Officer, Ms., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER FOLLOWING *PAVEY* HEARING GRANTING JUDGMENT TO DEFENDANTS ON BASIS OF FAILURE TO EXHAUST REMEDIES**

Plaintiff John Burge filed this complaint under 42 U.S.C. § 1983 alleging that Defendants Ashley Monroe and Joshua Mills violated his Eighth Amendment rights while incarcerated at Correctional Industrial Facility ("CIF"). Dkts. 2, 21. Defendants requested that the Court schedule an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), to address whether Plaintiff failed to exhaust administrative remedies before filing suit. Dkt. 30.

The Court held such hearing on April 2, 2024. Dkt. 46. Mr. Burge appeared pro se. Defendants appeared by counsel, Breanne Chambers and Stephanie Michelle Davis. The Court received stipulated exhibits A-G, and the parties stipulated to certain facts. Dkts. 41, 43. Testimony was solicited from (1) Mr. Burge; (2) Robert Stafford, grievance specialist at CIF; (3) Laura Rasmussen, assistant grievance specialist at CIF; (4) Eric Fonseca, Plaintiff's CIF case manager; and (5) Jeff Hancock, transportation officer at Wabash Valley Correctional Facility ("WVCF"), where Plaintiff is currently incarcerated. Following the hearing, the Court granted Mr. Burge seven days to file documentary exhibits that he had mentioned previously at his deposition and the final pre-*Pavey* hearing with Magistrate Judge Dinsmore, and which he claimed he had wanted to bring with him to the hearing but said he was prevented from doing so by WVCF officers. The Court

1

has not received said exhibits. The Court also granted the parties an opportunity to file post-hearing briefs. Defendants did so. Dkt. 49. Plaintiff did not.

For the reasons explained in this Order, the Court finds Defendants have met their burden of proof by establishing that Mr. Burge failed to pursue available administrative remedies before filing this lawsuit.

### I. APPLICABLE LAW

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). The statutory exhaustion requirement is that "[n]o action shall be brought with respect to prison conditions…by a prisoner…until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require.") (internal quotation omitted). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004).

It is the defendants' burden to establish that the administrative process was available to Mr. Burge. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

"This circuit has taken a strict approach to exhaustion." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). "An inmate must comply with the administrative grievance process that the State establishes, at least as long as it is actually available to the inmate." *Id.*

## II. FINDINGS OF FACT

The Court finds the following facts to be true based on the parties' stipulated facts, testimony, and exhibits presented during the hearing.

### A. Offender Grievance Process

The Indiana Department of Correction ("IDOC") has a standard Offender Grievance Process ("OGP"), which was adopted in September 2020 and in effect at the time of the incident at issue. Dkt. 41, p. 2. The OGP states that to grieve an issue, an inmate must submit a grievance on State Form 45471 no later than 10 business days from the date of the incident. Dkt. 43-2 (Ex. B), p. 9. An offender grievance specialist then has fifteen days to respond to a grievance on the merits if it is not first rejected for being improperly filled out, or untimely, or attempting to grieve a matter outside the grievance process. *Id.* at 10. If an inmate is dissatisfied with a grievance response, he or she may submit an appeal to the institution's warden or designee within five

business days of receiving the response, using State Form 45473. *Id.* at 12. If the inmate is dissatisfied with the warden/designee's response, the inmate may submit an appeal to the IDOC Offender Grievance Specialist within five days of the warden/designee's response. *Id.* at 13. An inmate must complete all three steps of this process in order to fully grieve an issue. *Id.* at 3.

When an inmate submits grievance paperwork, it is electronically scanned into a system called IRIS. Dkt. 47, p. 53.[1] When a document is scanned into the IRIS system, it also is physically stamped with a notation that it has been scanned and the date it was scanned. Dkt. 47, pp. 65-66, 68. It is not impossible for a document to be scanned into the IRIS system without it having been stamped, however, due to human error. *Id.* at 69. If a grievance specialist determines that the grievance is properly submitted and will not be rejected as defective, he or she will log the grievance into an electronic database[2] and assign it a grievance number. *Id.* at 54. Inmates may receive copies of documents scanned into the IRIS system by requesting them from their case manager and paying 10 cents per page. *Id.* at 59. Inmates who are in general population at CIF may submit a paper grievance by depositing it in one of several available mailboxes. *Id.* at 57.

**B. Mr. Burge's Exhaustion Efforts**

Mr. Burge was informed of the OGP when he initially arrived at the IDOC Reception and Diagnostic Center. Dkt. 41, p. 2. He also had access to the OGP through an electronic tablet while at CIF. Dkt. 47, pp. 9, 41. Mr. Burge currently is incarcerated at WVCF. Dkts. 41, p. 2; 47, p. 7. Between September 2020 and October 2021, he was housed at CIF. Dkt. 41, p. 2.

---

[1] It was discussed at the hearing that IDOC is in the process of switching to a fully-electronic grievance filing system, through which inmates can submit grievances using their electronic tablet, rather than having to submit paperwork that would then have to be physically scanned into IRIS. Dkt. 47, p. 78. The Court would welcome such a system as potentially reducing protracted litigation over precisely the kind of issue present here.

[2] There has recently been a switch at IDOC from the "OGRE" grievance database system to the "DELTA" system. Dkt. 47, pp. 63-65.

Mr. Burge's complaint alleges that on December 7, 2020, he was suffering from a urinary tract infection that caused him to have to urinate frequently. Dkt. 2, pp. 4-5. Despite Defendants Monroe and Mills allegedly knowing of Mr. Burge's condition, they failed to allow him to use a restroom for approximately five hours, causing Mr. Burge to urinate on himself. *Id.* at p. 5. Mr. Burge submitted a grievance, #120971, about this incident on December 7, 2020, using form 45471. Dkts. 41, p. 2; 43-3 (Ex. C), p. 1. On December 9, 2020, Mr. Stafford responded to (and did not reject) Mr. Burge's grievance, stating that a custody supervisor was notified of the incident and was looking into it but that "I can provide no further relief to your grievance." *Id.* at p.2. Mr. Burge was in general population at the time of the incident. Dkt. 47, p. 21.

Mr. Stafford has worked as a grievance specialist since 2007. *Id.* at p. 62. Based on his training for the position, it is Mr. Stafford's standard practice when responding to initial grievances to attach an OGP appeal form 45473 directly to the response. *Id.* Also, grievance forms are available throughout the CIF housing units and also available on demand from caseworkers. *Id.* at 56. Mr. Stafford never received an appeal or any response from Mr. Burge related to grievance #120971, nor is any such appeal reflected in the IDOC grievance database. *Id.* at 71; Dkt. 43-6 (Ex. F). An IRIS-scanned and stamped copy of Mr. Stafford's response, dated February 15, 2021, is blank on the lines where an inmate may sign it and indicate whether they agree or disagree with the response. Ex. C, Dkt. 43-3 (Ex. C), p. 2.

On February 9, 2021, Mr. Burge filed another grievance, #123292, stating, "I sent my grievance appeal for case log #120971 on January 9th, 2021. I have not received a response back on the matter yet. . . . I would like to know what is going on with my grievance for case log #120971 please and thank you." Dkt. 43-4, p. 1. Ms. Rasmussen investigated whether it was possible that a grievance appeal had been misplaced somehow and spoke with Mr. Stafford about

5

it. Dkt. 47, pp. 82-83. After failing to uncover any evidence that Mr. Burge had appealed grievance #120971, she responded to him and denied his grievance in case #123292. Dkt. 43-4 (Ex. D), p. 3. He appealed this determination, using the appropriate form 45473, insisting that he sent an earlier appeal in case #120971 inside of a sealed envelope. The appeal in case #123292 also was denied. *Id.* at p. 4.

### III. MR. BURGE'S EVIDENCE AND TESTIMONY

As part of the sworn allegations in Mr. Burge's complaint, he stated that when he received the response denying his grievance related to this incident, he

> signed the grievance specialist response, and dated it, and put a X on disagree, and returned it to the grievance specialist to be further processed, which would be receiving a grievance appeal with the grievance log number. However the Plaintiff Mr. Burge never received a grievance appeal even after requesting one.

Dkt. 2, pp. 3-4. Mr. Burge also attached to his complaint a copy of the grievance response in case # 120971 from Mr. Stafford. However, in direct contrast to Exhibit C introduced at the hearing, Mr. Burge's version of this document contains his signature, and is marked with an X next to "Disagree," and is dated 12/14/20 (although the first numeral originally was scratched out). Dkt. 2-1, p. 2. Mr. Burge's document also does not have an IRIS filing stamp.

Mr. Burge testified at the *Pavey* hearing that he never received a grievance appeal form despite requesting one. Dkt. 47, pp. 14, 16. He also said that his marking "disagree" on the original grievance form should have caused him to receive a grievance appeal form. *Id.* at 40. He said that after not receiving a form, he began submitting requests for interview slips with Mr. Stafford but did not receive a response. *Id.* at p. 27.

There also is the matter of the documents Mr. Burge claimed at several points in the case that he had in his possession, apparently the request for interview slips with Mr. Stafford he

6

mentioned during his testimony, and wished to submit to the Court in support of his argument that he had attempted to timely appeal the denial of his grievance. Mr. Burge first mentioned them during his pre-*Pavey* deposition by Defendants on March 13, 2024, and indicated that he was prepared to file a motion with the Court that included the slips. *Id.* at p. 43. Then, at a pre-*Pavey* telephonic conference with Magistrate Judge Dinsmore on March 25, 2024, Mr. Burge stated that he *would* mail the documents to the Court that day. *Id.* at p. 44. Magistrate Judge Dinsmore specifically ordered Mr. Burge to mail the documents that day and to bring them with him to the hearing. Dkt. 45. At the *Pavey* hearing, however, Mr. Burge testified that he had actually *already* sent the documents to the Court at the time of the conference. Dkt. 47 at p. 44. Also, Mr. Burge did not bring the documents with him to the *Pavey* hearing and claimed he was prevented from doing so by the guards who cuffed him in preparation for transport to the hearing.[3] *Id.* Transport Officer Hancock testified that Mr. Burge never mentioned not having documents he needed to bring to the hearing (although Officer Hancock apparently was not present when Mr. Burge originally was cuffed in his cell). *Id.* at 93-94. After the hearing, the Court allowed Mr. Burge an additional seven days to file his documents. As of today's date, the Court still has received nothing.

Aside from allegedly not receiving a grievance appeal form, Mr. Burge has never claimed any other type of interference by prison officials with his ability to grieve the incident at issue, nor that it was impossible for him to do so for any other reason. There also was no testimony or evidence that standard grievance forms were unavailable in Mr. Burge's CIF housing unit at the time, nor that Mr. Burge ever asked Mr. Fonseca about needing to obtain a grievance appeal form.

### IV. CONCLUSIONS OF LAW

---

[3] The Court's order to transport Mr. Burge to the *Pavey* hearing specified that he be allowed to bring any legal papers with him. Dkt. 35.

The questions before the Court here are relatively straightforward: did Mr. Burge timely try to appeal the response to his grievance, or did he not? Did he have the proper form to do so, or did he not? Based on the documentary evidence, the testimony in particular of Mr. Stafford and Ms. Rasmussen, and finding much of Mr. Burge's testimony to not be credible, the Court concludes that Mr. Burge did not timely try to appeal the response to his grievance, despite having a grievance appeal form available to him. In other words, (1) the IDOC grievance process was available to Mr. Burge; and (2) Mr. Burge failed to utilize it in the required manner. That means he did not exhaust administrative remedies in the time and manner required by the OGP. *See Woodford*, 548 U.S. at 90-91; *Dale*, 376 F.3d at 655.

The Court concludes that the attachment to Mr. Burge's complaint, purportedly his attempt to appeal the denial of his grievance, dkt. 2-1, p. 2, must be an after-the-fact fabrication. As indicated at the *Pavey* hearing, Mr. Burge could have obtained a copy of the original grievance response document from his caseworker. It would have been possible for Mr. Burge to have manipulated this document thereafter. Mr. Burge's document also is inconsistent with the IRIS-scanned copy of the grievance response, which was scanned into the system on February 15, 2021, or nearly three months after Mr. Burge would have had to appeal that response. Although the *absence* of an IRIS stamp on a particular document might be the result of human error, its *presence* on this grievance response is highly relevant.

Furthermore, Mr. Burge's document directly contradicts his allegation in grievance #123292 that he actually did send in a grievance appeal in case #120971 on January 9, 2021.[4] Mr. Burge claimed at the *Pavey* hearing that this must have referred to the last request for interview slip he sent in, and that he actually sent in the grievance appeal on December 14, 2020, but the

---

[4] An appeal submitted on that date would have been much too late anyway under the OGP.

8

Court does not find his testimony to be credible. This is especially so in light of Mr. Burge's testimony and his other claim in his sworn complaint that he *never* received a grievance appeal form even after requesting one. Either he did receive one, or he did not. And on this point, the Court credits Mr. Stafford's testimony that his standard practice was always to attach a grievance appeal form when responding to a grievance, and that such forms also were available in CIF housing units. Even in Mr. Burge's appeal in case #123292, he claims to have sent in an actual "grievance appeal," not an interview request slip. Dkt. 43-4 (Ex. D), p. 4. The Court concludes that Mr. Burge did timely receive or have access to a grievance appeal form and could have used it to timely appeal Mr. Stafford's grievance response, but Mr. Burge did not do so.

Regarding form 45473, it also is clear that even if Mr. Burge's document attached to his complaint was accurate, it was not the appropriate way to appeal the grievance response. Form 45473 must be used, and there is no question that Mr. Burge knew the form must be used, and the Court has found that he did have access to that form.

Finally, the Court takes judicial notice that it has received multiple timely filings from other pro se inmate litigants currently housed at WVCF in the past several months. The Court finds no reason to believe that Mr. Burge is being singled out for punitive treatment, as opposed to multiple other plaintiffs who are suing WVCF prison officials. Mr. Burge has given varying explanations to counsel for Defendants, Magistrate Judge Dinsmore, and the undersigned as to the alleged documents he wanted to introduce, and been given multiple opportunities to produce them, but has not done so. The Court must conclude that such documents do not exist, or would not support his claims even if they did.

## V. Conclusion

For the above reasons, the Defendants' affirmative defense of failure to exhaust administrative remedies is **sustained**. Mr. Burge's cause of action is **dismissed without prejudice**. Final judgment shall enter accordingly.

**IT IS SO ORDERED.**

Date: 5/13/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

JOHN BURGE
229009
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only